IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SCOTTY D. FINE,                      :

    Plaintiff,                   :
                                                        Case No. 3:08cv196
    vs.                          :
                                                    JUDGE WALTER HERBERT RICE
CITY OF PIQUA, OHIO,                 :

    Defendant.                   :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S CLAIM FOR ATTORNEY'S FEES (DOC. #9);
DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (DOC. #11); DECISION AND ENTRY
SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S
MOTION TO STRIKE PLAINTIFF'S DECLARATION (DOC. #14);
DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #15), TREATED AS A MOTION TO
DISMISS FOR WANT OF SUBJECT MATTER JURISDICTION; AGREED
TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION
(DOC. #4) VACATED; JUDGMENT TO BE ENTERED IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFF DISMISSING CAPTIONED
CAUSE WITHOUT PREJUDICE, FOR WANT OF SUBJECT MATTER
JURISDICTION; TERMINATION ENTRY

---

Plaintiff Scotty D. Fine ("Plaintiff" or "Fine") brought this action on June 11,

2008, alleging that the sign ordinance of Defendant City of Piqua ("Defendant" or

"Piqua") violated his rights under the First Amendment to the United States

Constitution. See Plaintiff's Verified Complaint (Doc. #1). In particular, Plaintiff

alleged that he was prohibited from displaying a sign on his property, as a result of the width of that property and the side-yard, setback requirement in that sign ordinance. Id. at ¶¶ 48-53. In his Complaint, Plaintiff sought declaratory and injunctive relief, nominal damages and attorney's fees. Id. at 15.

The day after he had initiated this litigation, Plaintiff filed a motion seeking a temporary restraining order and preliminary injunctive relief. See Doc. #2. Three days thereafter, this Court conducted a telephone conference call with counsel for the parties, in order to discuss that motion. During that conference call, the Defendant's counsel indicated that Piqua had agreed not to enforce the setback requirement in its sign ordinance and indicated that counsel for the parties would submitting an agreed order to that effect. Plaintiff's counsel indicated that the agreed order would be an agreed Temporary Restraining Order/Preliminary Injunction, leaving only the issue of a permanent injunction and nominal damages to be resolved. On June 17, 2008, this Court signed such an agreed Temporary Restraining Order/Preliminary Injunction. See Doc. #4.

On July 7, 2008, Piqua amended its sign ordinance, with which it reduced the setback requirement from thirty feet to five feet. On July 28, 2008, the Court conducted a telephone conference call with counsel, during which the Court and counsel agreed that, as a result of the Defendant's amendment to its sign ordinance, the only issues to be resolved in this litigation were the amount, if any, of nominal damages and attorney's fees Plaintiff was entitled to recover.[1] It was agreed that the Plaintiff would file a motion for attorney's fees within 30 days.

---

[1]Counsel for Plaintiff agreed that his client's claim for permanent injunctive relief was moot, given the amendment to Piqua's sign ordinance.

This case is now before the Court on the following motions, to wit: 1) Plaintiff's Motion for Summary Judgment (Doc. #11), with which Fine seeks summary judgment on his request for attorney's fees; 2) Defendant's Motion to Strike the Plaintiff's Declaration (Doc. #14); and Defendant's Motion for Summary Judgment (Doc. #15), with which Piqua argues that, since Plaintiff did not suffer an injury-in-fact as a result its sign ordinance, he is without standing to bring this litigation.[2] As a means of analysis, the Court will initially rule on Defendant's Motion to Strike the Plaintiff's Declaration (Doc. #14), following which it will turn to Defendant's Motion for Summary Judgment (Doc. #15), treating that motion as one to dismiss for want of subject matter jurisdiction. In the event that it decides that it can exercise subject matter jurisdiction over litigation, the Court will turn to Plaintiff's Motion for Summary Judgment (Doc. #11).

I. Defendant's Motion to Strike the Plaintiff's Declaration (Doc. #14)

With this motion, Defendant argues that the Court should strike Fine's Declaration (Doc. #12), because it does not contain facts that are admissible in evidence. Defendant argues that many of the statements in that document are

---

[2] Also pending is Defendant's Motion to Dismiss Plaintiff's Claim for Attorney's Fees (Doc. #9). Therein, Defendant argues that this Court must dismiss Plaintiff's claim for attorney's fees, because he failed to file a motion seeking same within 30 days of the July 28th conference call, as directed by the Court. Plaintiff filed his Motion for Summary Judgment on the issue of attorney's fees eight days after August 27, 2008, the date upon which his motion should have been filed. In the absence of a suggestion by Defendant that it suffered prejudice as a result of that eight-day delay, the Court overrules Defendant's Motion to Dismiss Plaintiff's Claim for Attorney's Fees (Doc. #9)

irrelevant and others constitute hearsay.³ Although the Defendant argues that the Court must strike the entirety of Plaintiff's Declaration, it focuses on ¶ 2(a)-(c) of that document.

In those three sub-paragraphs, Fine sets forth incidents which occurred between himself and Defendant concerning signs in 1995 and 1996. According to the Defendant, the information contained in ¶ 2(a)-(c) is not relevant and must, therefore, be stricken by the Court. This Court does not agree with Defendant. While it is doubtful as to whether the statements therein are relevant to Plaintiff's Motion for Summary Judgment (Doc. #11),⁴ which Fine's Declaration was submitted to support, that information is relevant to the Defendant's Motion for Summary Judgment. As is explained below, this Court, when ruling on Defendant's motion, will be required to resolve the question of whether Fine has suffered an injury-in-fact and, therefore, has standing to pursue this litigation. Whether those matters establish that he suffered such an injury need not be resolved for this Court to determine that the information contained in ¶ 2(a)-(c) is relevant.

---

³Defendant also argues that Fine's assertions in his Declaration are "unsubstantiated." See Doc. #14 at 3. In the absence of citation to binding authority in support of the proposition that this Court must strike portions of affidavits and declarations which are unsubstantiated, this Court will not strike any part of Plaintiff's Declaration for that reason.

⁴That motion raises the question of whether Fine was the prevailing party in this litigation. It is hard to imagine how incidents that occurred at least 12 years before this lawsuit was filed would make it more or less likely that he was the prevailing party herein.

In addition, the Defendant argues that this Court must strike sub-paragraph 2(c) from Plaintiff's Declaration, because it constitutes inadmissible hearsay. That portion of the Declaration provides:

> c) In connection with the 1995 prosecutions, City officials requested that the Judge order me to stop communicating with the public about the City via signage. A copy of a newspaper article documenting such request is attached as Exhibit A hereto.

Doc. #12 at 2. An illegible copy of a newspaper article is attached to Fine's Declaration. This Court agrees with the Defendant that the newspaper article is hearsay, i.e., an out of court statement offered to prove the truth of the matter asserted therein. See Turner v. City of Taylor, 412 F.3d 629, 652 (6th Cir. 2005) (noting that newspaper articles are inadmissible hearsay). The Court also concludes that Plaintiff has failed to demonstrate that he has personal knowledge of the matters set forth in ¶ 2(c) or that he is competent to testify as to those matters. See Fed. R. Civ. P. 56(e)(1) (providing that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated). For instance, Plaintiff has neglected to state how he learned that information set forth in § 2(c) or who made the request on behalf of Piqua. It is not self evident that the Plaintiff would have been party to a conversation between the Defendant and the Judge concerning such a request.

Accordingly, the Court sustains in part and overrules in part Defendant's Motion to Strike Plaintiff's Declaration (Doc. #14). That motion is sustained as it relates to ¶ 2(c) of that Declaration and Exhibit A attached thereto. Otherwise, the Defendant's motion is overruled.

II.  Defendant's Motion for Summary Judgment (Doc. #15)

With this motion, Defendant seeks summary judgment on Plaintiff's request for an award of attorney's fees, arguing that Fine is without standing to pursue that claim given that he has not suffered an injury-in-fact as a result of the side-yard, setback requirement in Piqua's sign ordinance.  It is axiomatic that Plaintiff's asserted lack of standing goes to this Court's subject matter jurisdiction to entertain this litigation.  In Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598 (6th Cir. 2007), the Sixth Circuit reiterated that standing is a component of subject matter jurisdiction:

> As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." [Raines v. Byrd, 521 U.S. 811, 818 (1997)] (internal quotation marks omitted).  "Article III standing … enforces the Constitution's case-or-controversy requirement." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004).

Id. at 607.

As indicated, this Court will treat the Defendant's motion as one to dismiss for lack of subject matter jurisdiction, rather than one for summary judgment, since it raises the question of whether this Court can exercise subject matter jurisdiction over this litigation, not whether the evidence raises a genuine issue of material fact which the jury must resolve at trial.  Accordingly, the Court will briefly review certain procedural standards which govern the resolution motions to dismiss for want of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

When ruling on such a motion, a court is permitted to resolve disputed jurisdictional facts by reference to evidence beyond the pleadings.  State

Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 77 n. 4 (2d Cir. 2007); Robinson v. Government of Malaysia, 269 F.3d 133, 141 n.6 (2d Cir. 2001); Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001); Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). See also, Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (noting that in deciding whether it can exercise subject matter jurisdiction "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

In Stalley v. Methodist Healthcare, 517 F.3d 911 (6th Cir. 2008), the Sixth Circuit reviewed the legal principles which must be applied whenever a defendant argues that the plaintiff lacks standing to bring a lawsuit:

> Stalley, as the party invoking federal subject matter jurisdiction, has the burden of demonstrating that he satisfies each element of Article III standing. Courtney v. Smith, 297 F.3d 455, 459 (6th Cir.2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)); see also Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000) ("As we have frequently explained, a plaintiff must meet three requirements in order to establish Article III standing."). "The irreducible constitutional minimum of standing contains three elements." Lujan, 504 U.S. at 560. First, Stalley must show that he has suffered an "injury" in fact. Id. He must have suffered "a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" Vt. Agency, 529 U.S. at 771 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). Second, Stalley must establish a causal connection between the alleged injury and the Appellees' conduct of which he complains. Lujan, 504 U.S. at 560. That is, the injury must be "fairly traceable" to the Appellees' actions. Id. (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)). Third, Stalley must demonstrate that the injury is redressable in this action. Vt. Agency, 529 U.S. at 771. There must be a "substantial likelihood," id., as opposed to mere speculation, that a favorable decision in this court will redress Stalley's alleged injury, Lujan, 504 U.S. at 561.

Id. at 916. In seeking summary judgment on the issue of standing, the Defendant focuses on the first requirement, that the Plaintiff suffer an injury-in-fact.

The Plaintiff has not alleged that he suffered an actual injury as a result of the former side-yard, setback requirement of 30 feet. For instance, the evidence before the Court establishes that Piqua did not enforce or threaten to enforce that restriction against Plaintiff or anyone else. For instance, no one has been issued a violation notice or been told to remove a sign for failing to abide by the setback requirement. Indeed, Plaintiff does not allege that the Defendant attempted to enforce the ordinance against him. Rather, the Plaintiff alleges that his fear that the Defendant would enforce the former setback requirement, prevented him from displaying political signs on his property. See Plaintiff's Complaint (Doc. #1) at ¶¶ 52, 54 and 56-57.

It is apparent that the alleged injury-in-fact suffered by Plaintiff, as a result of the side-yard, setback requirement in the sign ordinance, is a subjective chilling of his speech as a result of that restriction. However, the Supreme Court has held that "[a]llegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," given that "the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." Laird v. Tatum, 408 U.S. 1, 13-14 (1972) (internal quotation marks and citation omitted). In Morrison v. Board of Education of Boyd County, 521 F.3d 602 (6th Cir. 2008), cert. denied, 129 S.Ct. 1318 (2009), the Sixth Circuit discussed why a plaintiff cannot establish that he has suffered an injury-in-fact by relying solely on a subjective chill theory:

> To avoid conferring standing by way of guesswork, we require that a litigant demonstrate either a concrete harm or the threat of such harm. Laird

v. Tatum, 408 U.S. 1, 13 (1972); ACLU v. Nat'l Sec. Agency, 493 F.3d 644, 660 (6th Cir. 2007). With respect to the standing of First Amendment litigants, the Supreme Court is emphatic: "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird, 408 U.S. at 13-14; see also Warth v. Seldin, 422 U.S. 490, 501 (1975) (requiring a harm to be "distinct and palpable" for standing purposes). In Laird, the Court confronted the question of "whether the jurisdiction of a federal court may be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity." 408 U.S. at 10 (emphasis added). As narrated by the Court, the injury-in-fact alleged by the Laird plaintiffs resulted from a confluence of subjective perceptions, beliefs, and apprehensions. See id. at 13 (hypothesizing that the plaintiffs' alleged chill arose from their "very perception of the system as inappropriate to the Army's role," or "beliefs that it is inherently dangerous for the military to be concerned with activities in the civilian sector," or "less generalized yet speculative apprehensiveness that the Army may at some future date misuse the information in some way that would cause direct harm"). Without more, the Laird Court deemed those allegations insufficient. Id. at 13-14.

The question before us, then, is what "more" might be required to substantiate an otherwise subjective allegation of chill, such that a litigant would demonstrate a proper injury-in-fact? As might be expected, a variety of answers emerges across this court and our sister circuits. A non-exhaustive list includes the following: the issuance of a temporary restraining order, County Sec. Agency v. Ohio Dep't of Commerce, 296 F.3d 477, 482-83 (6th Cir. 2002); Howard Gault Co. v. Tex. Rural Legal Aid, Inc., 848 F.2d 544, 558 (5th Cir. 1988); an eight-month investigation into the activities and beliefs of the plaintiffs by Department of Housing and Urban Development officials, White v. Lee, 227 F.3d 1214, 1226, 1228 (9th Cir. 2000); and "numerous alleged seizures of membership lists and other property" belonging to the plaintiffs, Nat'l Commodity and Barter Ass'n v. Archer, 31 F.3d 1521, 1530 (10th Cir. 1994). Even this abbreviated list confirms that for purposes of standing, subjective chill requires some specific action on the part of the defendant in order for the litigant to demonstrate an injury-in-fact.

Conversely, absent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists. See, e.g., Grendell v. Ohio Supreme Court, 252 F.3d 828, 834 (6th Cir. 2001) ("[F]ears of prosecution cannot be merely 'imaginative or speculative.'" (quoting Younger v. Harris, 401 U.S. 37, 42 (1971))); Adult Video Ass'n v. U.S. Dep't of Justice, 71 F.3d 563, 566 (6th Cir. 1995) (same); United Presbyterian Church in the U.S.A. v.

> Reagan, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (distinguishing a chilling effect from "the immediate threat of concrete, harmful action").
>
> Characterizing chill as insufficient to establish standing is not original to this panel.  In Adult Video Association v. United States Department of Justice, 71 F.3d 563 (6th Cir. 1995), we explained that First Amendment chill typically constitutes the "reason why the governmental imposition is invalid rather than … the harm which entitles [a party] to challenge it." Id. at 566 (quoting United Presbyterian Church, 738 F.2d at 1378).  This understanding of chill comports with the underlying rationales of intersecting First Amendment doctrines.  For example, the doctrine of overbreadth relies on a "chill" theory to permit a litigant–who already has standing by virtue of demonstrating a concrete harm–to challenge a rule that may only affect others.  See Midwest Media Prop., L.L.C. v. Symmes Twp., 503 F.3d 456, 463 (6th Cir. 2007) ("[O]verbreadth does not excuse a party's failure to 'allege an injury arising from the specific rule being challenged ….'" (quoting Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 351 (6th Cir.2007))); United Presbyterian Church, 738 F.2d at 1379 ("It is only in this … respect that 'chilling effect' has anything to do with the doctrine of standing: It permits a person, who has standing to challenge governmental action because of the concrete harm it causes him, to assert a deficiency which may not affect him but only others.").  In order to have standing, therefore, a litigant alleging chill must still establish that a concrete harm–i.e., enforcement of a challenged statute–occurred or is imminent.  See Am. Library Ass'n v. Barr, 956 F.2d 1178, 1193 (D.C. Cir. 1992) ("[W]hether plaintiffs have standing … depends on how likely it is that the government will attempt to use these provisions against them … and not on how much the prospect of enforcement worries them.").

Id. at 608-10 (footnotes omitted).  See also Fieger v. Michigan Supreme Court, 553 F.3d 955, 963-64 (6th Cir. 2009).[5]

in Morrison, the defendant, in order to settle an earlier lawsuit, adopted a policy, prohibiting the harassment of students on the basis of actual or perceived

---

[5]Plaintiff contends that the decision of the Sixth Circuit in Morrison is contrary to a number of earlier decisions by the Supreme Court and the Sixth Circuit.  See Doc. #27 at 9-11.  Given that the Sixth Circuit reaffirmed its holding of Morrison in Fieger and since this Court is without the authority to overrule Sixth Circuit decisions, that is an argument that must be presented to the Sixth Circuit sitting en banc or to the Supreme Court.  Accordingly, the Court rejects Plaintiff's contention in that regard.

- 10 -

sexual orientation and requiring students to participate in training during which a psychologist stressed that an individual's belief that another is wrong does not give the former the right to point that out. The plaintiff, who believed that homosexuality is a sin, brought suit alleging that the policy violated his First Amendment rights, which he asserted included the right to tell others, including homosexuals, that their actions did not comport with his beliefs of Christian morality. In concluding that the plaintiff had not suffered an injury-in-fact as a result of the defendant's adoption of the policy and, therefore, was without standing, the Sixth Circuit noted that the claim at stake in that litigation involved Morrison's choice to chill his own speech, based upon his perception that he would be punished if he were to engage in prohibited speech. 521 F.3d at 610. The Morrison court also noted that it could only speculate on the question of whether the plaintiff would have been disciplined if he had spoken. Id.

Based upon Morrison, the Defendant argues:

> [T]he mere presence of the [sign ordinance's] enforcement provision, without more, is an insufficient foundation upon which to base a claim of injury. Whatever limitations upon his display of a yard sign the Plaintiff perceived, those restrictions actually were self-imposed: [Piqua] took no action to chill Plaintiff's speech.

Doc. #15 at 10.[6] For reasons which follow, this Court finds that Plaintiff has failed to establish the requisite "more," needed to substantiate his subjective allegation

---

[6]In response to that argument by Defendant, Plaintiff has quoted the following passage from Deida v. City of Milwaukee, 192 F. Supp.2d 899, 906 (E.D.Wisc. 2002), to wit: "whether a defendant has directly threatened enforcement and whether a plaintiff faces a credible threat of prosecution are different questions." See Doc. #27 at 6. Given that Deida was decided long before the Sixth Circuit decided Morrison and Fieger and the District Court did not apply the standards established by the Sixth Circuit therein, this Court does not consider Deida to be persuasive authority.

of chill, and to demonstrate that he has suffered an injury-in-fact. Accordingly, this Court concludes that the Plaintiff does not have standing to prosecute this litigation, meaning that the Court is without subject matter jurisdiction over it.

Herein, the evidence establishes that the side-yard, setback requirement of Piqua's sign ordinance became effective on October 31, 2006. During the approximately 20 months that the restriction was in effect, Piqua did not enforce or threaten to enforce the setback requirement against Plaintiff or anyone else. In an effort to show the requisite "more," Plaintiff points to incidents that occurred in 1995 and 1996, which he set forth in his Declaration (Doc. #12). In ¶ 2(a) of that document, Plaintiff recounts incidents that occurred over a two-day period in 1995, during which he parked his car and a trailer he had been towing in Piqua. The car and trailer had signs on them which were critical of the woman who was then the Mayor of Piqua. On each day, Plaintiff's car and trailer were towed and he was charged with disorderly conduct and parking violations.[7] After the second day, all charges against him were dropped and he was able to recover his car and trailer without payment of an impound or towing fee. In ¶ 2(b) of his Declaration, Plaintiff recounts an incident that occurred in 1996. During that year, Fine was holding a sign critical of the Piqua Police Department,[8] when an individual in an automobile drove by and shouted her agreement with his sign. According to Plaintiff, that individual allegedly ran a red light, and he walked to the location of her stop to witness the citation. Although the passing driver was not given a

---

[7]He was able to recover his automobile and trailer after the first day by paying the towing fee.

[8]The phrase "cops suck" was inscribed on the sign. State v. Fine, 1997 WL 797776 (Ohio App. 1997) at *1.

- 12 -

traffic ticket, Fine was arrested for obstructing official business and littering.[9]  He states in his Declaration that he ultimately "defeated" both charges.[10]  In State v. Fine, 1997 WL 797776 (Ohio App. 1997), the Miami County Court of Appeals reversed Plaintiff's conviction for obstructing official business, concluding that there was not sufficient evidence in the record to support that conviction.  Given that those incidents occurred more than ten years before Plaintiff initiated the present litigation and neither involved the enforcement or threatened enforcement of the side-yard, setback requirement in Piqua's sign ordinance, this Court is not able to find that either or both constitute the "more" that is required, in addition to Plaintiff's subjective belief, to demonstrate that he suffered an injury-in-fact as a result of that setback restriction.

In addition, the Plaintiff has cited an exchange of correspondence between himself and Christopher Schmiesing ("Schmiesing"), the Planning & Zoning Supervisor for Piqua.  On March 14, 2007, Fine wrote to Schmiesing, stating that he had recently purchased a copy of the Defendant's sign ordinance and that he understood that it limited the number and size of non-commercial, ground signs which could be placed in a person's front yard.  Plaintiff closed his letter by stating that he specifically wanted to know whether the number and size of non-commercial, yard signs displayed by a resident of Toledo would violate Piqua's sign

---

[9]According to Plaintiff, the littering occurred when he temporarily placed the sign on the ground.

[10]Fine also cites ¶ 2(c) of his Declaration, which this Court will not consider since it has stricken ¶ 2(c) above.  Parenthetically, even if this Court had not stricken that portion of Fine's Declaration, the Plaintiff's failure to explain his basis for knowing the information set forth therein would have caused the Court to disregard that information as unreliable.

ordinance.[11] Schmiesing responded to Fine's letter three days later, indicating that Plaintiff should refer to Piqua Code § 154.100, which regulates temporary signs, for the information he sought. Schmiesing also indicated that, under that provision of Piqua's Code, an unlimited number of noncommercial signs could be displayed, and that the size of same was dependent upon the size of the lot on which they would be displayed. Schmiesing was not able to tell Plaintiff whether the size signs discussed in the attachments to the latter's letter would have been permitted under Piqua's sign ordinance, since he had not been given sufficient information (i.e., the size of the signs and the lot on which they were located). Quite simply, the exchange of correspondence between Plaintiff and Schmiesing does not establish the requisite "more," necessary to substantiate Plaintiff's allegations of a subjective chill of his First Amendment rights as a result of the side-yard, setback restriction in Piqua's sign ordinance.

Based upon the foregoing, this Court finds that the Plaintiff has not suffered an injury-in-fact as a result of the setback requirement in Piqua's sign ordinance and that, therefore, Plaintiff lacks the requisite standing to prosecute this litigation.[12] Consequently, this Court concludes that it is without subject matter

---

[11]Those yard signs were discussed in attachments to Fine's letter, which indicated that Jeffrey Nelson, a resident of Toledo, Ohio, had been threatened with fines for violating that municipality's sign ordinance by displaying four antiwar signs in his front yard.

[12]Given that this Court has concluded that the Plaintiff has not suffered an injury-in-fact, it is not necessary to address the parties' arguments concerning redressability. In addition, since the Court has concluded that Plaintiff's lack of standing deprives it of subject matter jurisdiction, it is not necessary to discuss the parties' contentions concerning mootness, other than to reemphasize that they agree that the amendment to the Piqua sign ordinance has rendered moot Plaintiff's request for permanent injunctive relief.

jurisdiction over this litigation and, accordingly, sustains the Defendant's Motion for Summary Judgment (Doc. #15), treated as a motion to dismiss for want of subject matter jurisdiction.

Having concluded that it is without subject matter jurisdiction over this litigation, the Court hereby vacates the Agreed Temporary Restraining Order/Preliminary Injunction (Doc. #4) previously entered herein.[13] In addition, the vacation of that Order means that the Plaintiff was not the prevailing party in this litigation. See Sole v. Wyner, 551 U.S. 74 (2007) (holding that a plaintiff does not achieve prevailing party status, under 42 U.S.C. § 1988, by obtaining a preliminary injunction that is reversed, dissolved, or otherwise undone by final decision in same case). Therefore, the Court overrules Plaintiff's Motion for Summary Judgment (Doc. #11).[14]

Judgment is to be entered in favor of the Defendant and against the Plaintiff, dismissing the Plaintiff's Complaint without prejudice for lack of subject matter jurisdiction.

---

[13] Since this Court is without subject matter jurisdiction over this litigation, it is without the judicial power to award nominal damages to the Plaintiff.

[14] In that motion, Plaintiff has argued that he was the prevailing party in this litigation and, therefore, entitled to an award of attorney's fees under § 1988, because this Court had entered the Agreed Temporary Restraining Order/Preliminary Injunction (Doc. #4).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

September 11, 2009

                                          /s/ Walter Herbert Rice
                                          WALTER HERBERT RICE, JUDGE
                                          UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.